UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FAIR ELECTIONS OHIO,** *et al.*,

      **Plaintiffs,**

**-v-**                                                                       **CASE NO.: 2:12-cv-763**
                                                                             **JUDGE SMITH**
                                                                             **Magistrate Judge Abel**

**JON HUSTED,** *et al.*,

      **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 11). Plaintiffs have responded and this matter is now ripe for review. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED**.

**I.**      **BACKGROUND**

On June 29, 2011, the Ohio General Assembly passed Amended Substitute House Bill Number 194 ("HB 194"). Governor John Kasich signed the bill on July 1, 2011. HB 194 made changes to Ohio's election laws, such as changing the period of absentee voting in Ohio from thirty-five to twenty-one days before any election and limiting the early in-person voting to exclude Sundays, Saturday after noon and the entire weekend before the general election.

Plaintiff Fair Elections Ohio is a political action committee formed to promote a statewide referendum petition effort to submit to the voters of Ohio the question of whether HB 194 should be approved or rejected. Pursuant to procedures set forth in the Ohio Constitution

and the Ohio Revised Code, Plaintiffs submitted an initial petition to the Attorney General for a statewide referendum on HB 194.  Plaintiffs circulated the petitions for signature and received the required amount of signatures to have the referendum placed on the November 2012 ballot.  On December 9, 2011, Secretary of State Jon Husted certified the referendum petition for inclusion on the November 6, 2012 general election ballot.

On May 8, 2012, the Ohio General Assembly passed Substitute Senate Bill Number 295, ("SB 295"), which repealed HB 194.  SB 295 was signed on May 15, 2012 and became effective on August 15, 2012.  On the same day, Secretary of State Husted issued a statement that, "Referendums determine if laws passed by the legislature should be upheld.  With the law at the heart of the referendum on HB 194 having been repealed, there is no longer a question to place before the voters, and taxpayers will save more than $1 million in the process."  (Compl. ¶ 19).  The referendum was not placed on the 2012 ballot.

Then, on August 15, 2012, Defendant Secretary of State issued Directive 2012-35 that sets uniform "regular business hours" for all Ohio elections boards, beginning October 2, 2012 through November 2, 2012.  The Directive eliminated weekend hours.  Secretary Husted noted in the Directive, "after talking with elections officials across the state, I have decided to level the playing field on voting days and hours during the absentee voting period in order to ensure that the Presidential Election in Ohio will be uniform, accessible for all, fair, and secure."  (Compl. ¶ 26, Doc. 2-1).

On July 17, 2012, Plaintiffs' counsel filed an action in this Court, *Obama for America, et al. v. Husted*, Case No. 2:12-cv-636, seeking a preliminary injunction to restore the early voting in the three days prior to the election.  After hearing argument on this issue, on August 31, 2012,

Judge Economus granted Plaintiffs' Motion for Preliminary Injunction declaring Ohio Revised Code § 3509.03 unconstitutional to the extent is changes the deadline for in-person early voting from close of business on the day before Election Day to 6 p.m. on the Friday before Election Day, and Secretary of State Husted is enjoined from implementing or enforcing said law.

>The Sixth Circuit upheld this ruling finding:
>
>The order clearly restores the status quo ante, returning discretion to local boards of elections to allow all Ohio voters to vote during Saturday, November 3, 2012; Sunday, November 4, 2012; and Monday, November 5, 2012. Because Ohio Rev. Code § 3509.03 is unconstitutional to the extent that it prohibits non-military voters from voting during this period, the State is enjoined from preventing those voters from participating in early voting. But the State is not affirmatively required to order the boards to be open for early voting. Under the district court's order, the boards have discretion, just as they had before the enactment of § 3509.03. The district court's remedy was therefore appropriate.

*Obama for America v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012).

While the aforementioned litigation was pending, Plaintiffs initiated this case on August 24, 2012, more than two months before the November 2012 general election.  However, Plaintiffs never filed any requests for immediate relief, such a temporary restraining order and/or preliminary injunction.  In fact no action has been taken in this case until Defendants filed their Motion to Dismiss on January 14, 2013.  This Motion is now ripe for disposition.

**II.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be

dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, at 678.  While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' "  *Iqbal*, at 679 (quoting Fed. R.

Civ. P. 8(a)(2)).  In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint for three reasons: Plaintiffs' claims are moot, barred by Eleventh Amendment immunity, and/or fail to state a claim upon which relief may be granted.  The Court will address these arguments in turn.

### A. Mootness

Defendants argue that Plaintiffs' claims asserted in their Complaint are now moot and therefore must be dismissed.  Defendants assert that Plaintiffs' Complaint seeks to have the referendum placed on the ballot for the November 2012 election.  Defendants argue that it is impossible for the Court to order them to place the referendum on the November 2012 ballot, since the election has passed.  Further, Defendants argue that the Court lacks jurisdiction to issue a declaration that the Defendants should have put the referendum on the November 2012 ballot because the Eleventh Amendment bars suits seeking declaratory judgment that a state official's past conduct violated federal law.

Plaintiffs argue that their claims are not moot as they seek legal damages and other relief from Defendants' alleged violation of Plaintiffs' constitutional rights.  Specifically, Plaintiffs have alleged violations of the First and Fourteenth Amendments to the United States Constitution.  Plaintiffs have requested at the conclusion of their Complaint: "injunctive and/or equitable relief to redress the violations of Plaintiffs' constitutional rights as set forth in the Complaint, and for an award of damages (against the Defendants in their individual capacities only) in an amount to be proven at trial;" as well as for declaratory judgments and attorneys' fees

and costs.

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest ['personal stake'] in the outcome." *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980); *see also In re Lucre, Inc.*, 471 F. Supp.2d 845, 847 (W.D. Mich. 2007) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief). The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson v. Mich. High Sch. Athletic Assn'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997).

There is no question that Plaintiffs initiated this case with the ultimate goal to obtain injunctive relief with respect to the November 2012 general election. Plaintiffs' Complaint specifically requests:

a. Directive 2012-35 violates the rights of Plaintiffs secured to them by the First and Fourteenth Amendments to the United States Constitution and/or state law, is void ab initio and must be rescinded and revoked;
b. The refusal of the Defendants to submit the H.B. 194 referendum petition to the electors of the State of Ohio is in violation of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and/or state law, and **the petition must therefore be placed on the ballot**;

(Emphasis added) (Compl. ¶ 39).

At the time Plaintiffs initiated this case, in August 2012, there was still sufficient time for them to request injunctive relief and for the Court to order such relief, if justified, prior to the election. However, Plaintiffs did not seek any immediate relief.[1] The Court can only speculate

---

[1] Plaintiffs assert that "[d]ue to the limited time available between the Defendants' wrongful actions and the election, Plaintiffs were unable to fully litigate whether Defendants could be ordered to place the referendum on the ballot." (Pls' Response at 8).

as to why Plaintiffs did not pursue this case, but the case before Judge Economus in this Court was already pending and dealt with similar issues.  Further, Plaintiffs in this case have the same counsel as those in the Judge Economus case and they were able to fully litigate that case prior to Election Day.  Nonetheless, the Plaintiffs essentially waived any injunctive relief by not requesting it at the time they initiated this case and those claims are now moot.

In addition to the claims for injunctive relief, Plaintiffs maintain that their constitutional rights under the First and Fourteenth Amendments were violated when Defendant Husted unilaterally refused to submit the H.B. 194 referendum to the Ohio Ballot Board for a statewide referendum vote in the November 2012 general election.  Plaintiffs assert that just because their primary claim for relief, injunctive relief, is moot, does not require that Plaintiffs' entire case be dismissed.  Plaintiffs reference *Banas v. Dempsey*, 742 F.2d 277, 281 (6th Cir. 1984), which held that:

> even though plaintiffs' primary claim for relief–an injunction to restrain conduct in violation of federal law–had become moot, it does not necessarily follow that there was no longer a case or controversy sufficient to support federal court jurisdiction under Article III of the Constitution.  If, for example, plaintiffs, in addition to their claim for prospective injunctive relief, could also have asserted a claim for damages or restitution as a result of being deprived of welfare benefits, it is clear that such a claim would have saved their actions from the bar of mootness.

Plaintiffs further rely on *Corrigan v. City of Newaygo*, 55 F.3d 1211, 1213 (6th Cir. 1995), in arguing that a court "may appropriately adjudicate an issue when it is one that is 'capable of repetition, yet evading review.'" In *Corrigan*, the appellants were candidates for office who were denied access to the local ballot under the City of Newaygo's ordinance prohibiting delinquent taxpayers from appearing on the ballot.  The City argued on appeal that the case was moot because the election had taken place and the potential candidates had now

-7-

paid their taxes.  An exception to the mootness doctrine is that a court may adjudicate an issue when it is one that is "capable of repetition, yet evading review."  *Dunn v. Blumstein*, 405 U.S. 330 (1972).  The Sixth Circuit held that the case was not moot because the City's ordinance could be enforced again in a future election.

However, unlike *Banas* and *Corrigan*, there is no issue capable of repetition, yet evading review.   There is no current statute that was applied to prevent Plaintiffs' referendum from being placed on the ballot like in Corrigan.  Rather, this is a unique set of facts.  For this to reoccur, a bill would have to be passed and signed by the Governor, then a referendum petition would have to successfully qualify for the ballot, then the General Assembly would have to repeal the challenged statute, and then the Secretary of State would have to decline to place the referendum on the ballot.  Plaintiff has not argued that this scenario has ever arisen in the past, nor have they given any reason to believe that it will occur in the future.  Therefore, the mootness exeption does not apply.  *See Resnick v. Patton*, 258 Fed. Appx. 789, 793-94 (6th Cir. 2007) (scenario complained of was so fact-specific and unlikely to recur that mootness exception did not apply).

### B. Qualified Immunity

Defendants argue that the individual Defendants, Secretary of State Husted and the members of the Ohio Ballot Board, are entitled to qualified immunity because Plaintiffs have failed to show that they violated clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendants argue, however, that the Complaint contains no allegations sufficient to overcome qualified immunity.

Whether a right is clearly established for purposes of qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  The right must be defined with enough specificity to put a reasonable officer on notice that his conduct is unlawful, and not merely stated as a broad proposition.  *Reichle v. Howards*, 132 S. Ct. 2088, 2093-94 (2012); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (the proposed legal rule must be assessed "in light of the specific context of the case, not as a general proposition").

Plaintiffs have generally asserted violations of their First and Fourteenth Amendment rights (freedom of speech, right to petition, due process, and equal protection), asserting that Secretary of State Husted refused to carry out his statutory and constitutional duties to present the referendum to the Ballot Board.  Plaintiffs cite several cases that may state a clearly established right to have a referendum placed on the ballot, however, Plaintiffs' have failed to show a clearly established right to place a referendum on the ballot regarding a repealed statute.  Defendants assert, and the Court agrees, that this situation appears to be one of first impression.

Ohio's referendum process is a legislative function in which electors are asked whether the referred bill should become law.  But since H.B. 194 had already been repealed, there was nothing on which the electors could cast a meaningful vote.  H.B. 194 would not become law irrespective of the outcome of the vote on the referendum.  The Court does not find that there is a clearly established right to compel the State to go though a futile, purely symbolic electoral exercise.  Defendants acted rationally and constitutionally when they made the decision not to place the referendum on the November 2012 ballot.  Accordingly, Plaintiffs have failed to sufficiently allege any constitutional violation sufficient to overcome qualified immunity.

## IV. CONCLUSION

Based on the aforementioned, Defendants' Motion to Dismiss is **GRANTED**.

The Clerk shall remove Document 11 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**